IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
November 12, 2025 Session

IN RE SHYENNE G., ET AL.[1]

**Appeal from the Chancery Court for Knox County**
**No. 201978-2        Richard B. Armstrong, Jr., Chancellor**
————————————————————

**No. E2025-00535-COA-R3-PT**
————————————————————

This action involves the termination of a father's parental rights to his minor children. Following a bench trial, the court found that clear and convincing evidence established several grounds of termination and that termination was in the best interest of the children. We reverse, holding that the record does not support the trial court's finding of clear and convincing evidence in support of the alleged statutory grounds of termination.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed; Case Remanded**

JOHN W. MCCLARTY, P.J., E.S., delivered the opinion of the court, in which THOMAS R. FRIERSON, II, and KRISTI M. DAVIS, JJ., joined.

T. Chase Clayton, Knoxville, Tennessee, for the appellant, Carlos C.

Barbara W. Clark, Knoxville, Tennessee, for the appellee, Debra C.

**OPINION**

**I.        BACKGROUND**

Shyenne and Johanna (collectively "the Children") were born to Chelsea G. ("Mother") and Carlos C. ("Father") in 2015 and 2017, respectively. The Tennessee Department of Children's Services ("DCS") removed the children from Mother's custody in 2019. In May 2020, DCS placed the Children with a paternal relative, Debra C. ("Petitioner"). The Children have lived with Petitioner since that time.

———————————

[1] This court has a policy of protecting the identity of children in parental rights termination cases by initializing the last name of the parties.

DCS supervised visitation between the Children and Father until January 2021, when Petitioner was tasked with supervising visitation. The relationship between Father and Petitioner deteriorated in February 2021, leading Petitioner to restrict visitation to a third-party location. Father remitted an application and an intake fee for visitation through Parent Place; however, visits were never scheduled.

On March 8, 2021, Petitioner moved to terminate Father's[2] parental rights and to adopt the Children based upon the following statutory grounds: (1) abandonment by willful failure to remit child support; (2) abandonment by willful failure to visit; and (3) the persistence of conditions which led to removal. Father completed an affidavit of indigency, and the trial court appointed counsel to represent Father throughout the proceedings. With the benefit of counsel, Father filed an answer denying the allegations and alleging the affirmative defense of a lack of willfulness as applied to the abandonment grounds.

The proceedings were delayed due to the COVID-19 pandemic and changes in appointed counsel. The action finally proceeded to a hearing on December 16, 2024. Petitioner testified that she lives with the Children and a third child in an apartment complex. Her daughter lives upstairs in a different apartment and is available to help with the Children when needed. She professed that the Children were doing well in her care and were making good grades at school. She confirmed that she was able to financially provide for the Children through her long-term employment with the school system.

Petitioner testified that Father never remitted payment to her for child support. She agreed that he bought some items for them, e.g., shoes and clothing. She stated that Father has visited occasionally with other family members in recent years but did not provide any testimony specifically concerning Father's visitation or lack thereof during the pertinent time period, namely in the four months prior to the filing of the termination petition. Notably, Petitioner admitted that DCS supervised visitation until January 2021.

Petitioner's daughter confirmed that she was available and willing to help with the Children as needed. She regularly provided transportation to and from activities. She asserted that she transported the Children to their supervised visitation with DCS from August 2020 through December 2020. She confirmed that Mother was present and stated that she "thought" Father was also present at the park for visitation.[3]

Father testified that the Children were removed from Mother's custody and that DCS later informed him of the removal. DCS developed a permanency plan for him at the

---

[2] Mother's rights were terminated in the same proceeding; however, she is not a party to this appeal.

[3] Mother testified that Father was not present at the park because Petitioner would not allow them to visit together. The timeline for this park visitation is unclear from the record because DCS was responsible for supervision until January 2021.

time of removal. He claimed that he completed several requirements.[4] Father confirmed that he maintained regular visitation twice per month while the Children were in DCS custody. Petitioner then allowed him to visit under her supervision once custody was transferred to her. He presented pictures and videos confirming his visitation with the Children on November 14, November 26, December 10, and December 31, 2020. He testified that his relationship with Petitioner deteriorated in February 2021, prompting Petitioner to require supervised visitation through a third-party company at Parent Place. He paid the requisite fee to register for visitation; however, the visits were never scheduled.

Father testified that he sent Petitioner cash for the Children through CashApp and his mother. He also regularly purchased clothing, toys, and food for visits. He estimated that he sent her approximately $300 during the pertinent time period. He alleged that Petitioner conditioned his visitation on his ability to bring items or money. He stated that he stopped giving Petitioner cash money in 2022 because she would not let him see the Children. He did not file a contempt action because the current proceeding was pending.

Father testified that he is currently employed at a roofing company and has maintained that employment for approximately five months. Prior to that, he worked at a different roofing company. While Father admitted employment during the pertinent time period, no evidence was presented establishing his income at any stage of the custodial episode. He asserted that he lives with his mother and his stepfather in a four-bedroom house; however, he routinely stays with his girlfriend and their child in her two-bedroom apartment. He claimed that the Children could either live with him at his girlfriend's apartment or that they could all move in with his mother.

Father's mother, Lisa R. ("Grandmother"), confirmed that Father lived in her home but stayed regularly with his girlfriend. She recalled transporting Father to visits at Petitioner's house in 2020. She agreed that two visits included several family members for Thanksgiving and a birthday party on December 31. She stated that Father brought food and gifts to the party and that Father also gave her money to remit payment to Petitioner on two occasions.[5] She testified that Father's child support was automatically deducted from his paycheck by the State of Tennessee until January 2021. She confirmed that DCS supervised visitation between Father and the Children until January 2021.

Following the hearing, the trial court granted the termination petition based upon the statutory grounds alleged, finding Petitioner's testimony more credible than Father's. The trial court found that termination of Father's parental rights was in the best interest of the Children. This appeal followed.

---

[4] The permanency plan was not entered into evidence.

[5] Petitioner claimed that she never received this money.

## II.    ISSUES

We consolidate and restate the issues pertinent to this appeal as follows:

A.    Whether clear and convincing evidence supports the court's finding of statutory grounds for termination.

B.    Whether clear and convincing evidence supports the court's finding that termination was in the best interest of the Children.

## III.    STANDARD OF REVIEW

Parents have a fundamental right to the care, custody, and control of their children. *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *In re Drinnon*, 776 S.W.2d 96, 97 (Tenn. Ct. App. 1988). This right "is among the oldest of the judicially recognized liberty interests protected by the Due Process Clauses of the federal and state constitutions." *In re M.J.B.*, 140 S.W.3d 643, 652–53 (Tenn. Ct. App. 2004). "Termination of a person's rights as a parent is a grave and final decision, irrevocably altering the lives of the parent and child involved and 'severing forever all legal rights and obligations' of the parent." *Means v. Ashby*, 130 S.W.3d 48, 54 (Tenn. Ct. App. 2003) (quoting Tenn. Code Ann. § 36-1-113(I)(1)). "'[F]ew consequences of judicial action are so grave as the severance of natural family ties.'" *M.L.B. v. S.L.J.*, 519 U.S. 102, 119 (1996) (quoting *Santosky v. Kramer*, 455 U.S. 745, 787 (1982)).

Although parental rights are superior to the claims of other persons and the government, they are not absolute and may be terminated upon statutory grounds. *See In Re Angela E.*, 303 S.W.3d 240, 250 (Tenn. 2010); *Blair v. Badenhope*, 77 S.W.3d 137, 141 (Tenn. 2002). Due process requires clear and convincing evidence of the existence of the grounds. *In re Drinnon*, 776 S.W.2d at 97. A parent's rights may be terminated only upon

(1) [a] finding by the court by clear and convincing evidence that the grounds for termination of parental or guardianship rights have been established; and (2) [t]hat termination of the parent's or guardian's rights is in the best interest[ ] of the child.

Tenn. Code Ann. § 36-1-113(c). "[A] court must determine that clear and convincing evidence proves not only that statutory grounds exist [for the termination] but also that termination is in the child's best interest." *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). The existence of at least one statutory basis for termination of parental rights will support the trial court's decision to terminate those rights. *In re C.W.W.*, 37 S.W.3d 467, 473 (Tenn. Ct. App. 2000), *abrogated on other grounds by In re Audrey S.*, 182 S.W.3d 838 (Tenn. Ct. App. 2005).

The heightened burden of proof in parental termination cases minimizes the risk of erroneous decisions. *In re C.W.W.*, 37 S.W.3d at 474; *In re M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998). "Evidence satisfying the clear and convincing evidence standard establishes that the truth of the facts asserted is highly probable and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *In re Audrey S.*, 182 S.W.3d at 861 (citations omitted). It produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established. *In re A.D.A.*, 84 S.W.3d 592, 596 (Tenn. Ct. App. 2002); *Ray v. Ray*, 83 S.W.3d 726, 733 (Tenn. Ct. App. 2001); *In re C.W.W.*, 37 S.W.3d at 474.

In 2016, the Tennessee Supreme Court provided guidance to this court in reviewing cases involving the termination of parental rights:

> An appellate court reviews a trial court's findings of fact in termination proceedings using the standard of review in Tenn. R. App. P. 13(d). Under Rule 13(d), appellate courts review factual findings de novo on the record and accord these findings a presumption of correctness unless the evidence preponderates otherwise. In light of the heightened burden of proof in termination proceedings, however, the reviewing court must make its own determination as to whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, amount to clear and convincing evidence of the elements necessary to terminate parental rights. The trial court's ruling that the evidence sufficiently supports termination of parental rights is a conclusion of law, which appellate courts review de novo with no presumption of correctness. Additionally, all other questions of law in parental termination appeals, as in other appeals, are reviewed de novo with no presumption of correctness.

*In re Carrington H.*, 483 S.W.3d 507, 523–24 (Tenn. 2016) (citations omitted); *see also In re Gabriella D.*, 531 S.W.3d 662, 680 (Tenn. 2017).

In the event that the "resolution of an issue [] depends upon the truthfulness of witnesses, the trial judge, who has had the opportunity to observe the witnesses and their manner and demeanor while testifying, is in a far better position than this Court to decide those issues." *In re Navada N.*, 498 S.W.3d 579, 591 (Tenn. Ct. App. 2016) (citing *McCaleb v. Saturn Corp.*, 910 S.W.2d 412, 415 (Tenn. 1995); *Whitaker v. Whitaker*, 957 S.W.2d 834, 837 (Tenn. Ct. App. 1997)). "[T]his court gives great weight to the credibility accorded to a particular witness by the trial court." *In re Christopher J.*, No. W2016-02149-COA-R3-PT, 2017 WL 5992359, at *3 (Tenn. Ct. App. Dec. 4, 2017) (citing *Whitaker*, 957 S.W.2d at 837).

# IV.    DISCUSSION

## A.

As indicated above, the trial court granted the termination petition based upon the following statutory grounds: (1) abandonment by failure to support; (2) abandonment by failure to visit; and (3) the persistence of conditions which led to removal.  We will address each ground in turn.

### 1.    Abandonment by failure to support

Abandonment can occur when a parent has "failed to support or [ ] failed to make reasonable payments toward the support of the child" for a period of four consecutive months immediately before the filing of a petition to terminate parental rights.  Tenn. Code Ann. § 36-1-102(1)(A)(i).  The statute defines failure to support as a parent's failure "for a period of four (4) consecutive months, to provide monetary support or the failure to provide more than token payments toward the support of the child."  Tenn. Code Ann. § 36-1-102(1)(D).  By statute, parents are expected to offer more than "token support," which "means that the support, under the circumstances of the individual case, is insignificant given the parent's means."  Tenn. Code Ann. § 36-1-102(1)(B).  "Every parent who is eighteen (18) years of age or older is presumed to have knowledge of a parent's legal obligation to support such parent's child or children."  Tenn. Code Ann. § 36-1-102(1)(H).

A lack of willfulness can constitute an affirmative defense to the ground of failure to support. Tenn. Code Ann. § 36-1-102(1)(I).  A parent "shall bear the burden of proof that the failure to . . . support was not willful" and must establish the lack of willfulness by a preponderance of evidence.  *Id.*  While Father alleged that he remitted some support, he pled the absence of willfulness as an affirmative defense in his answer to the petition.  Here, the petition was filed on March 8, 2021. The relevant four-month period is from November 8, 2020, through March 7, 2021.  *See In re Jacob C.H.*, No. E2013-00587-COA-R3-PT, 2014 WL 689085, at *6 (Tenn. Ct. App. Feb. 20, 2014) (statutory four-month period covers four months preceding the day the termination petition was filed and does not include the day petition was filed).

Grandmother testified that child support was deducted from Father's paycheck through December 2020.  Father confirmed his employment at the time of the hearing in 2024 but was not asked to reveal his income during the pertinent time period between 2020 and 2021.  The record also reflects that Father submitted an affidavit of indigency,[6] which the trial court relied upon in appointing counsel after the filing of the termination petition.  While the trial court credited Petitioner's testimony, she did not provide any evidence

---

[6] Father claimed an income of approximately $500-700 per week; however, the affidavit was completed on May 5, 2021, approximately two months outside the pertinent time period.

concerning Father's employment or income during the pertinent time period. Under these circumstances, we hold that the evidence presented failed to establish Father's means or ability to remit support by clear and convincing evidence. *See generally In re Mattie L.*, 618 S.W.3d 335, 346–48 (Tenn. 2021) (reversing the trial court's finding of willful failure to support when the petitioners failed to show that the father had the capacity to remit support through wage statements or other evidence). We reverse this ground of termination. This conclusion does not end our inquiry because only one statutory ground is required to support the termination of parental rights. Tenn. Code Ann. § 36-1-113(c).

### 2. Abandonment by failure to visit

Parental rights may be terminated for abandonment when a parent fails to visit a child for a period of four consecutive months immediately before the filing of a petition to terminate parental rights. Tenn. Code Ann. § 36-1-102(1)(A)(i). A failure to visit "means the failure, for a period of four (4) consecutive months, to visit or engage in more than token visitation." Tenn. Code Ann. § 36-1-102(1)(E). The statute requires that parents offer their children more than "token visitation," defined as visitation that "under the circumstances of the individual case, constitutes nothing more than perfunctory visitation or visitation of such an infrequent nature or of such short duration as to merely establish minimal or insubstantial contact with the child." Tenn. Code Ann. § 36-1-102(1)(C).

A parent may assert as an affirmative defense pursuant to Tennessee Rule of Civil Procedure 8.03 that his or her failure to visit was not "willful." Tenn. Code Ann. § 36-1-102(1)(I). The burden is on the parent asserting the defense to prove by a preponderance of the evidence that his or her failure to visit was not willful. *Id.*; *In re Kolton C.*, No. E2019-00736-COA-R3-PT, 2019 WL 6341042, at *5 (Tenn. Ct. App. Nov. 26, 2019).

As discussed previously, the relevant four-month period is from November 8, 2020, through March 7, 2021. The trial court found that Father had abandoned the Children by his failure to visit, finding that his visits were token in nature because they occurred with other family members and were "minimal, insubstantial, [and] of short duration." In so holding, the court credited Petitioner's testimony as to the nature of the visits; however, no such testimony was given by Petitioner concerning the pertinent time period. Petitioner agreed that DCS supervised visitations in 2020; Father confirmed that he visited twice monthly under DCS supervision in 2020 and that he also attended family gatherings and parties with the Children during the pertinent time period. The parties further agreed that visitation was stopped in February 2021 by Petitioner, who directed Father to submit an application for third-party visitation. Father testified that he completed the application and paid the requisite fee but that Petitioner filed the termination petition shortly thereafter without ever scheduling a visit.

Father argues on appeal that Petitioner prevented him from maintaining regular

visitation. It is well established in Tennessee that a parent who attempts to visit and maintain relations with his or her child but is thwarted by the acts of others and circumstances beyond the parent's control has not willfully abandoned the child." *In re John A.*, No. E2020-00449-COA-R3-PT, 2021 WL 32001 at *7 (Tenn. Ct. App. Jan. 4, 2021) (citing *In re Adoption of A.M.H.*, 215 S.W.3d 793, 810 (Tenn. 2007)). The record confirms that Father visited the Children regularly prior to February 2021 and that his failure to visit after that time was a result of Petitioner's refusal to continue her coordination of visitation. While Petitioner was certainly free to pursue third-party supervision for visitation, a party "cannot significantly interfere with the noncustodial parent's visitation and still rely on the ground of failure to visit to terminate parental rights." *In re Braelyn S.*, E2020-00043-COA-R3-PT, 2020 WL 4200088 at *8 (Tenn. Ct. App. July 22, 2020). Under these circumstances, we hold that the evidence presented failed to establish by clear and convincing evidence Father's willful failure to visit. We reverse this ground of termination. This conclusion does not end our inquiry because only one statutory ground is required to support the termination of parental rights. Tenn. Code Ann. § 36-1-113(c).

### 3. The persistence of conditions which led to removal

Under Tennessee law, a trial court may terminate parental rights when:

(3)(A) The child has been removed from the home or the physical or legal custody of a parent or guardian for a period of six (6) months by a court order entered at any stage of proceedings in which a petition has been filed in the juvenile court alleging that a child is a dependent and neglected child, and:

(i) The conditions that led to the child's removal still persist, preventing the child's safe return to the care of the parent or guardian, or other conditions exist that, in all reasonable probability, would cause the child to be subjected to further abuse or neglect, preventing the child's safe return to the care of the parent or guardian;

(ii) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent or guardian in the near future; and

(iii) The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable, and permanent home[.]

Tenn. Code Ann. § 36-1-113(g)(3). Termination of parental rights requires clear and convincing evidence of all three factors. *In re Valentine*, 79 S.W.3d at 550.

The record before this court does not contain the order of removal. We have no doubt that the order exists; however, we cannot "assume the existence of facts which are not in the record." *State Dept. of Children's Servs. v. D.W.J.*, No. E2004-02586-COA-R3-CV, 2005 WL 1528367, at *4–5 (Tenn. Ct. App. June 29, 2005) (reversing the termination ground of the persistence of conditions based upon the failure to admit the removal order into the record). Father also testified that the Children were removed from Mother's custody, a fact admitted by Petitioner at the hearing and again on appeal. The "threshold consideration" for this ground is a court order of removal from the home or custody of the parent. *In re Allie-Mae K.*, No. M2020-00215-COA-R3-CV, 2020 WL 6887870, at *11–12 (Tenn. Ct. App. Nov. 24, 2020) (reversing the termination ground of the persistence of conditions based upon the failure to admit the removal order into the record). Accordingly, we reverse this ground of termination.

B.

All parents in Tennessee are entitled to fundamentally fair procedures in termination of parental rights proceedings because "few consequences of judicial action are so grave as the severance of natural family ties." *M.L.B.*, 519 U.S. at 119 (quotation omitted). The Petitioner did not file or present a single record or exhibit in support of her petition for termination of Father's parental rights. Instead, she relied solely on testimony from herself and her daughter in her attempt to establish the statutory grounds alleged. While the trial court credited Petitioner's testimony, she presented no evidence to establish Father's income during the pertinent time period. She also admitted that Father visited the Children under DCS supervision during the pertinent time period and that she refused visitation in February 2021, pending coordination through a third-party. Lastly, she agreed that the Children were removed from Mother's custody, not Father's. Following our review, we hold that the evidence presented to terminate Father's parental rights was insufficient on each and every ground alleged. Accordingly, we need not consider whether the termination of his parental rights was in the best interest of the Children.

## V.    CONCLUSION

The judgment of the trial court is reversed. The case is remanded to the trial court for such further proceedings as may be necessary and consistent with this opinion. Costs of the appeal are taxed to the appellee, Debra C.

s/John W. McClarty

JOHN W. McCLARTY, JUDGE

- 9 -